IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CHUCK PRUITT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:18-CV-324 |
| | § | |
| ASPHALT ZIPPER, INC., | § | JURY REQUESTED |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY DEMAND**

Chuck Pruitt and Lisa Pruitt ("Plaintiffs") file this, their First Amended Complaint, complaining of Defendant Asphalt Zipper, Inc. ("Asphalt Zipper"), and in support thereof would respectfully show the Court the following:

**I.
PARTIES**

1. Plaintiff Chuck Pruitt is an individual residing in the State of Texas.

2. Plaintiff Lisa Pruitt is an individual residing in the State of Texas.

3. Defendant Asphalt Zipper, Inc. is a corporation with its principal place of business in Utah. It has appeared and answered.

**II.
SUBJECT MATTER JURISDICTION**

4. Plaintiffs Chuck Pruitt and Lisa Pruitt are and were residents of the State of Texas at all times relevant to this case.

5. Defendant Asphalt Zipper is incorporated under the laws of Utah and has its principal place of business in Utah.

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

## III.
## PERSONAL JURISDICTION

7.      Defendant Asphalt Zipper designed, manufactured and sold Asphalt Zipper machines and components, including Water System components, into the stream of commerce, including transactions directly conducted by and/or through dealerships located in Texas. Defendant knew at all times during the design, manufacture and sale of these Asphalt Zipper machines and components that the products in question would travel among and through each and every state, including Texas, and Defendant should have reasonably anticipated the need to answer suit arising out of the manufacture, design, and sale of those Asphalt Zipper machines and components in Texas. Defendant's contacts with the State of Texas are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over them.

8.      Additionally, and in the alternative, Defendant Asphalt Zipper purposefully availed itself to business dealings in the State of Texas and could reasonably expect to respond to complaints therein. Defendant's purposeful availment of the benefit and protection of the laws of Texas is sufficient to support proper exercise of personal jurisdiction over Defendant.

## IV.
## VENUE

9.      Venue is proper in the Western District of Texas, Waco Division, because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2).

## V.
## FACTS

10. Plaintiff, Chuck Pruitt, is employed by the Falls County Road and Bridge Department. On October 17, 2018, Plaintiff Chuck Pruitt was at work when a Water System component fell on his left leg. Mr. Pruitt suffered a near amputation above the ankle.

11. The Water System component that injured Plaintiff Chuck Pruitt was manufactured by Defendant Asphalt Zipper, Inc. The Water System component is intended to be used in conjunction with the Asphalt Zipper machine, also manufactured by Defendant Asphalt Zipper, Inc.

12. The Asphalt Zipper machine, which is designed, manufactured and sold by Defendant Asphalt Zipper, Inc., can be attached to the bucket of a front-end loader. The Asphalt Zipper machine is used to pulverize and "reclaim" asphalt for street patches, full road repairs, base stabilization and for opening utility trenches in asphalt, among other uses.

13. The Water System component, which is also designed, manufactured and sold by Defendant Asphalt Zipper, Inc., is used in conjunction with the Asphalt Zipper machine to provide water for the Asphalt Zipper to extend its bit life and aid in compaction. The Water System component comes in two main parts: the adapter plate and the tank assembly. The adapter plate attaches with a pin to the loader hitch at the rear of the front-end loader. The tank assembly, which includes the tank, frame, pump and hose, attaches to the adapter plate. The Water System component weighs about 200 pounds empty.

14. The subject Water System component that injured Plaintiff Chuck Pruitt was not in use at the time of the incident and was instead being stored by Plaintiff's employer. When being stored, the Water System component is held up by three legs: one leg on the back of the Water System component and one leg on either side of the Water System component.

15. The legs can then be manually raised or lowered to adjust the height of the Water System component when not in use. Each leg, when in the extended position, is held in place with a metal pin. When properly designed and manufactured, the metal pin should hold the leg tightly in place. However, the leg of the subject Water System component that injured Plaintiff Chuck Pruitt was not held in place because the hole for the pin was misshapen which caused the pin to fit incorrectly. As a result, the leg was allowed to rotate forward and backward up to five inches.

16. The excess movement of the leg allowed the center of gravity of the Water System component to shift in front of its support points, which contributed to the instability of the Water System component while being stored. The fact that the Water System component was empty at the time of the incident made the basis of this lawsuit also contributed to the instability of the Water System component, as the additional weight when full would shift the center of gravity so that the Water System component might not have fallen and injured Plaintiff Chuck Pruitt. There were no warnings or instructions on the Water System component cautioning users on proper storage procedures.

## VI.
## CLAIMS AGAINST DEFENDANT ASPHALT ZIPPER, INC.

### A. PRODUCTS LIABILITY—DESIGN DEFECT

17. The Water System component was originally designed, manufactured, and sold by Defendant Asphalt Zipper, Inc. At the time the Water System component in question was sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing Water System components, such as the one in question, in the stream of commerce.

18. At the time the Water System component in question was designed, manufactured and sold by Defendant, it was defective in design and unreasonably dangerous. The defective and

unreasonably dangerous condition of the Water System component in question was a direct and proximate cause of the injuries to Plaintiff Chuck Pruitt.

19. The Water System component reached Plaintiff Chuck Pruitt in the condition expected and intended by Defendant.

20. Plaintiff Chuck Pruitt used the Water System component for its intended and foreseeable purpose.

21. The defects regarding the Water System component include but are not limited to the excess movement of the leg which allowed the Water System component's center of gravity to move in front of its support points, thus contributing to the instability of the Water System component. Further, the Water System component was designed in a way that rendered it more unstable when stored empty than if it were stored full.

22. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the Water System component's utility.

23. The Water System component was defectively designed, because the poor-fitting pin on the Water System component's leg allowed it to move excessively, which allowed the Water System component's center of gravity to move in front of its support points, thus contributing to the instability of the Water System component. Further, the Water System component was designed in a way that rendered it more unstable when stored empty than if it were stored full. The instability caused by the design of the Water System component proximately caused Plaintiff Chuck Pruitt's injuries. Specifically, Defendant could have designed the Water System component with a better fitting pin that would not have allowed the excess movement of the leg which contributed to the Water System component's instability. Further, Defendant could have designed

the Water System component to take into account the difference in the Water System component's center of gravity when stored empty or full. Defendant could have also designed the Water System component to have four legs instead of three—one for each side of the Water System component—to increase stability when stored.

24. Each alternative design for the above identified defects was available in the market and was technologically and economically feasible at the time the Water System component was manufactured and would not have impaired the utility of the Water System component.

25. Further, at the time the Water System component in question was sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the Water System component was a producing cause of Plaintiff Chuck Pruitt's injuries and Plaintiffs' damages.

26. At the time of the incident made the basis of this lawsuit, the Water System component was in the same or substantially similar condition as it was at the time when it left Defendant's control and was placed into the stream of commerce. Any alterations to the Water System component were made by a dealer and/or agent of Defendant.

27. No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government were applicable to the Water System component at the time it was manufactured that governed any product risk that caused the accident and/or injuries to Plaintiff Chuck Pruitt. To the extent Defendant attempts, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendant withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

### B. PRODUCTS LIABILITY—MANUFACTURING DEFECT

28. The Water System component at issue was originally designed, manufactured, and sold by Defendant. At the time the Water System component in question was sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing Water System components, such as the one in question, in the stream of commerce.

29. The Water System component reached Plaintiff Chuck Pruitt in the condition expected and intended by Defendant.

30. Plaintiff Chuck Pruitt used the Water System component for its intended and foreseeable purpose.

31. When it left control of Defendant, defects in the manufacture of the Water System component rendered it defective and unreasonably dangerous in that the Water System component was unstable and prone to fall while not in use. In particular, the pin which was supposed to hold the leg in place did not properly fit its hole, which allowed the Water System component's leg to move excessively and contributed to the instability of the Water System component.

32. The defective manufacture of the Water System component directly and proximately caused Plaintiff Chuck Pruitt's injuries and Plaintiffs' damages.

### C. PRODUCTS LIABILITY—MARKETING DEFECT/FAILURE TO WARN

33. Defendant failed to give adequate and proper warnings and instructions regarding the dangers of the Water System component which rendered the product defective and unreasonably dangerous and was a producing cause of Plaintiff Chuck Pruitt's injuries and damages. Specifically, Defendant failed to warn potential and actual users of the dangers and risk of the defects. Defendant's failure to warn was a proximate cause of Plaintiff Chuck Pruitt's injuries and Plaintiffs' damages.

### D. STRICT LIABILITY

34. The Water System component that injured Plaintiff Chuck Pruitt was originally designed, manufactured, and sold by Defendant. At the time the Water System component in question was sold, Defendant was in the business of designing, manufacturing, testing, assembling, monitoring, selling, and/or otherwise placing Water System components, including the subject Water System component and its defective condition, which was the proximate cause of Plaintiff Chuck Pruitt's injuries.

35. The Water System component reached Plaintiff Chuck Pruitt in the condition expected and intended by Defendant.

36. Plaintiff Chuck Pruitt used the Water System component for its intended and foreseeable purpose.

37. Due to the Water System component's design and manufacture, the Water System component was not reasonably stable. The failure to appropriately design and manufacture the Water System component, which contributed to the Water System component's instability, were the direct and proximate cause of Plaintiff Chuck Pruitt's injuries. Accordingly, Defendant should be held strictly liable.

38. Defendant placed the defective Water System component into the stream of commerce and expected or could reasonably foresee the use of said Water System component by individuals, such as Plaintiff Chuck Pruitt, in the condition in which the Water System component was designed, manufactured and sold.

39. The subject Water System component was designed, manufactured and assembled so that the defective condition was undiscoverable until such time as an incident, such as the incident made the basis of this lawsuit, occurred.

40. The defective condition of the subject Water System component was not observable by Plaintiff Chuck Pruitt who relied upon Defendant to design, test, manufacture, sell and deliver the subject Water System component in a condition fit for use for the purposes intended.

41. As a direct and proximate result of the failure of Defendant to properly design, test, manufacture, sell and deliver the subject Water System component, Plaintiff Chuck Pruitt suffered severe personal injuries and Plaintiffs' damages.

### E. NEGLIGENCE

42. Defendant committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiff Chuck Pruitt's injuries and Plaintiffs' damages.

43. Defendant's acts or omissions constituting negligence include:

   a. Failing to properly design the Water System component;

   b. Failing to properly manufacture the Water System component;

   c. Failing to adequately test the Water System component;

   d. Failing to recall the Water System component or, alternatively, to warn consumers of a known danger/defect in the Water System component;

   e. Failing to disclose post-sale information known about dangers or defects in the Water System component;

   f. Concealing known dangers associated with the Water System component; and

   g. Failing to meet or exceed internal corporate guidelines.

### F. GROSS NEGLIGENCE.

44. Plaintiffs make claims for punitive damages pursuant to the Texas Constitution; therefore, Plaintiffs will not be prohibited from introducing evidence of actual damages. Plaintiffs seek punitive damages for the gross negligence and/or malicious conduct of Defendant which was a

proximate cause of the failure of the Water System component and of Plaintiff Chuck Pruitt's injuries and Plaintiffs' damages.

45. Specifically, Defendant's conduct, when viewed objectively from Defendant's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

46. Furthermore, Defendant had actual, subjective awareness of the risk(s) but proceeded with a conscious indifference to the rights, safety or welfare of others.

### G. EXEMPLARY DAMAGES

47. Because Defendant is liable for gross negligence, punitive damages should be assessed against it as a deterrent to such future bad conduct and as a punishment for its bad acts in an amount to be determined by the jury.

### H. LOSS OF CONSORTIUM

48. At all times material to this lawsuit, Lisa Pruitt was married to Chuck Pruitt. As a direct and proximate result of the acts and omissions of Defendant, as described above, Lisa Pruitt has suffered a loss of consortium as that term is defined under Texas law. As a result, Lisa Pruitt has suffered damages within the jurisdictional limits of this Court. Plaintiff Lisa Pruitt brings claims for loss of consortium and loss of services related to the injuries sustained by her husband, Chuck Pruitt, in the incident made basis of this suit. Lisa Pruitt is legally entitled to, and hereby brings claims for, damages to and the loss of love, affection, protection, emotional support, companionship, care, and society that occurred, and continue to occur, due to the injuries sustained by Chuck Pruitt, which was proximately caused by Defendant's conduct. Lisa Pruitt is legally entitled to and hereby brings claims for the loss of consortium and loss of services sustained in the past, and for the loss of consortium and loss of services that she, in all reasonable probability, will sustain in the future.

## VII.
## DAMAGES

49. Plaintiffs as a result of the incident seeks compensation for the following damages:

   a. The amount of reasonable medical expenses necessarily incurred in the past, and those that will reasonably be incurred in the future;

   b. Past and future physical pain and suffering of Plaintiff Chuck Pruitt;

   c. Past and future physical disfigurement suffered by Plaintiff Chuck Pruitt;

   d. Past and future physical impairment suffered by Plaintiff Chuck Pruitt;

   e. Past and future mental anguish of Plaintiff Chuck Pruitt;

   f. Past loss of wages and loss of future earning capacity of Plaintiff Chuck Pruitt;

   g. Loss of consortium;

   h. Cost of suit;

   i. Exemplary damages; and

   j. Any and all other damages in which Plaintiffs may be justly entitled.

## VIII.
## PRAYER

50. For the foregoing reasons, Plaintiffs prays that the Defendant be cited to appear and answer herein. Upon final trial by a jury, which is hereby demanded, Plaintiffs are entitled to have judgment against Defendant and requests that the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable by law, along with any and all other relief the Court may deem appropriate.

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & AZIZ**

*/s/ Muhammad S. Aziz*
MUHAMMAD S. AZIZ
State Bar No. 24043538
800 Commerce Street
Houston, Texas 77002
(713) 222-7211
(713) 225-0827 – Facsimile
maziz@awtxlaw.com

**ROBERT STEM, JR.**

*/s/ Robert Stem, Jr.*
ROBERT STEM, JR.
State Bar No. 24068667
801 Washington Ave., Ste. 300
Waco, Texas 76701
(254) 776-0554
(254) 442-7937 – Facsimile
robert@rstemlaw.com

**ATTORNEYS FOR PLAINTIFFS**